The United States Court of Appeals for the Ninth Circuit is now in session. Thank you. Well, I don't have to ask you to be seated because you probably are seated wherever you are. Welcome to the Ninth Circuit. We're here for argument in this comeback case of Thorstenson v. United States Department of Labor, and you may proceed. Thank you. May it please the court and counsel. This is the second petition for judicial review from the Administrative Review Board in this Federal Railroad Safety Act retaliation case. After remand from this court's decision in Thorstenson 1, the ARB improperly reexamined, reconsidered, and disagreed with this court's rulings and holdings in Thorstenson 1 in violation of the rule of mandate and law of the case. The ARB's decision constitutes legal error, jurisdictional error, and this court should once again reverse. I have to admit that I feel I'm in the awkward position of trying to argue to this court what its own opinion means, so I apologize in advance for that awkward position that the parties are in. However, as that is the main the court, I will address some of them. You know, I want to just kind of first address the first appeal and sort of the background and how that appeal came to this court because I think context matters. As I cited in my brief, this court doesn't make advisory decisions. It doesn't decide issues that are not before the court, and a lot of the arguments from the DOL and BNSF are that this court didn't decide the affirmative defense in Thorstenson 1 conclusively. Instead, its opinion regarding Thorstenson's argument on the policy being unreasonably and unduly burdensome was actually a decision as to the contributory factor standard, but that was never briefed to in the first appeal. It was never briefed to the ARB before the first appeal to this court. What was briefed from the very beginning was that BNSF could not meet its affirmative defense because its late reporting rule was so unduly burdensome that it constituted retaliation. That was what was presented to this court on the first appeal, and there was never an argument to this court in the first appeal that Thorstenson could or could not meet the contributory factor standard because the rule was unduly burdensome on that basis. In fact, the only arguments raised to this court related to the contributory factor standard was a pure legal issue as to whether the ARB erred in creating this new proximate cause legal standard, and this court agreed with our position in the first appeal that that legal proximate cause standard was a new causation standard that was not permissible under the statute. There was never any other argument related to contributory factor on the first appeal, and ergo, this court's decision related to Thorstenson's or this court's decision deciding that the ARB erred in rejecting Thorstenson's contention that the rule was so unduly burdensome that constituted retaliation necessarily decided the affirmative defense issue. So, may I ask you just for clarification? In our first decision, we said that Thorstenson was effectively disciplined for this protective activity of reporting the workplace injury. So, am I understanding your argument to be that given that determination, it would not be possible for the railroad to prove an affirmative defense? Correct. Substantively, this court's decision in Thorstenson, one, the content and the spirit of the decision would preclude any sort of argument on remand in that regard as well, and that is because BNSF, in order to prove its affirmative defense, has to prove that there is an extrinsic non-retaliatory reason for discipline apart from the report and the protected activity itself. And in Thorstenson, one, this court clearly said that the discipline for the rule was, in effect, discipline for the protected activity. Therefore, the late reporting rule could not serve as a non-retaliatory justification for discipline. And I want to point out that the parties have both agreed to this point in the Department of Labor in its answering brief states that failure to comply with the rule itself cannot be the basis for the affirmative defense in light of this court's ruling in Thorstenson, one, and that's at the DOL brief at 47. And before this, the briefing on remand before the ARB, BNSF petitioned for en banc review before this court. And in that briefing, BNSF stated the panel reasons that punishing for not timely reporting amounted to punishing him for reporting. And that was in its petition for rehearing at six. So, both parties agree that Thorstenson, one, precludes or at least decided that punishing Thorstenson for the late reporting rule was, in effect, punishing him for reporting. And therefore, they cannot later come back and use the late reporting rule as a non-retaliatory justification for its affirmative defense. So, Judge Watford? Oh, I'm sorry. I can ask my question after yours. No, no, go ahead, please. Oh, okay. So, my question for you, counsel, is how do you respond to the railroad's argument before now that even if we were right in our first decision in saying that, you know, it was virtually impossible for the plaintiff to comply with the rule and, therefore, it couldn't, you know, there wasn't a valid basis for invoking the rule. The railroad now argues that even if it was mistaken in thinking that the rule could be complied with, that it's nonetheless genuine or, yeah, I guess, you know, kind of, it's genuine belief that the rule had been, the timing rule had been violated, nonetheless can support the affirmative defense. What is your response to that argument? Sure. I think this court has never held that an honest belief can serve as a way to avoid liability under FRISA. And in Frost, even though Frost applied only to the contributory factor standard, there was a discussion in Frost about how an honest belief might serve as a justification or for a railroad to avoid liability if the honest belief related to an honest belief that the Instead, there's never been any dispute that the railroad here enforces its rule consistently at every time somebody doesn't report within 72 hours. That was discussed a lot in the first appeal that the railroad does that regardless of circumstances and did so regardless of circumstances here. So the fact that the railroad had an honest belief that the rule was violated because it enforced that rule harshly and in every single circumstance, regardless of the facts, that's what the railroad did. So an honest belief that it could enforce its rule just simply because Thorsonson didn't report the triggering event within 72 hours was discussed pretty extensively in the first appeal that that could still constitute retaliation if Thorsonson couldn't comply with the rule, which were the circumstances here and what this court decided in the first appeal. Okay, thank you. I wanted to ask you if we take our words in the first decision to be exactly what they say, your argument as I understand it is we should remand for damages and the BNSF and the department argue of course that there can be a remand for the affirmative defense determination. So in your view, does it matter whether we characterize that initial determination that we made as the law of the case or whether we characterize what the ARB did as a violation of the mandate? I don't know that it matters. Particularly, I think that the first ruling did remand for consideration consistent with the disposition and the ARB did not certainly violated the law of the case in multiple ways. So the law, whether it's the law mandate or the law of the case, I'm not sure is particularly important because our position is that both were violated clearly here. I mean the ARB determined that your analysis of the record was wrong and then it relied on its own analysis of the record to once again come to the conclusion that the affirmative defense was met and also explicitly again rejected Thorsonson's argument that the rule was unduly burdensome. And so those holdings would violate rule of the case whether or not the mandate specifically was clear enough that it prohibited them from considering the affirmative defense again. And if your question was more specific to whether there's anything on liability that is not precluded by your first decision in Thorsonson 1, we have conceded in our briefing that a standalone dismissal issue is not precluded by Thorsonson 1 such that the railroad could have raised and did on remand raise its argument that it could meet its affirmative defense by a standalone dismissal. That was not argued in Thorsonson 1 nor was it decided in Thorsonson 1. However, our position is that the record precludes that argument. This case has been going on for 12 years. There's no need for that. However, I would understand the court's position if it would want to allow the ARB to decide that in the first instance. But didn't they really concede that the standalone issue would not hold up if that were the only issue involved, given the disposition that was meted out to the other person involved? I thought they conceded that, didn't they? I don't know that they conceded that, but there is testimony in the record by the HR manager that if complainant had not had the first level S on his record, she would not have anything different. That testimony in the record precludes any argument that even if the reporting violation had not occurred, that BNS would have done anything different. Unless the court has any questions, I'll reserve the rest of my time for rebuttal. You may. Thank you. We'll next hear from Mr. Rommel. Hi. Good afternoon. My name is Dean Rommel. I'm the attorney at law for the BNS case. The ARB was free on remand to consider and determine any issues that this court did not decide in First Instance 1, and of course, was precluded from or foreclosed from determining any issues that were expressly or impliedly decided by this court in this first decision. There's really no argument that this court expressly decided the affirmative defense issue. There was no mention of the affirmative defense, the evidence that the agency put forth, or the substantial evidence standard review that would apply. The issue that the petitioner has raised is whether it was impliedly decided by First Instance 1. Our argument is that to conclude that the First Instance 1 decision impliedly decided the issue of the affirmative defense would mean that the court ignored the statutory burdens in FRISA. It means that the court would have ignored the applicable substantial evidence standard, and that the court would have ignored its admonition in FROS, BDNSF, that all the relevant statutory burdens need to be assessed. We, of course, don't think that the court did that. Specifically, with respect to FRISA's statutory framework, the language from the finding that he was effectively disciplined for his injury report, that language is parents, the causation standard that exists under FRISA. Under FRISA, when the causation standard is satisfied, it's a relatively low standard, an employee-friendly standard, and when that standard is satisfied by an employee, there is a violation. That's all the employee needs to do to prove a violation, and that triggers an affirmative defense possibility for the employer. It's that second statutory framework, that affirmative defense framework, that is a different consideration. The employee has shown that there is enough evidence for the employee to recover under FRISA, but Congress has provided an affirmative defense that allows the employer to avoid completely any liability if the employer can show that it was taken by clear and convincing evidence, would have taken the same action in the absence of a protected activity. But counsel, can I interject and just ask you to, it's an awkward situation to be in, as your opponent recognized, but what is your understanding then of the scope of the remand our court issued in the first decision? Because what I understood to be in play the first go-round was that the railroad was saying, well, no, we didn't discipline him for the protected activity of reporting the injury, and that would clearly be wrongful. Instead, what we did is we disciplined him for violating the timing requirement, and so that's completely non-retaliatory, and it's completely legitimate. And what I thought our court said is, well, no, that's not okay in this situation because of the unique circumstances of the injury and the like. It was basically impossible for him to comply with that rule, and so we're going to just take the timing aspect of things off the table. And if that's what we did, what could possibly be left at that point for the affirmative defense? That's what I'm saying, but what would the remand have been for, you know, what proceedings would be conducted with respect to the affirmative defense in that scenario? Well, I certainly agree that the compliance with the injury reporting rule, I mean, this court clearly found that he could not comply in those circumstances, and any argument based on his failure to comply with the injury reporting rule cannot support the affirmative defense. But, you know, there's a substantial evidence review standard that applies here, and that requires the court to affirm, you know, the agency's finding unless it was not supported by substantial evidence in the record as a whole. And there's additional evidence in the record besides his failure to comply with the policy that supports the finding that what was really clearly not going on here was retaliation for the injury report. And, you know, it's our argument that that entire scope of evidence needs to be considered, and especially in a case like this case where the discipline... Can you be more specific? Can you just be more specific? What other evidence are you talking about? Because, again, I thought the issue was framed to us as though what we really disciplined him for was not for filing the report, not for engaging in the protected activity, but rather because he violated the timing requirement. And we said, no, you can't on the violation of the 72-hour reporting rule under these circumstances. So what was left of the affirmative defense? That's what I'm trying to get at. And there was this other evidence. Right. In a situation like this where the injury report is so related, the ARB has looked at extrinsic factors to try to make this determination. And the evidence that the agency relied on here, both prior and after this court's decision, Thorsten Zumwalt, includes evidence that he was with the policy in the past, as were many others, which suggests that there was no, that the policy itself was not protectual. And that the fact that the policy was not protectual could be evidence and is evidence that supports... But counsel, let me interrupt you a minute. Hadn't this court found that he, that it was impossible for him to comply? You're saying he could have complied. I'm not saying he could. Sorry. Yeah. I mean, I thought part of the finding was that it was impossible for him. And given that, at least in this case, the rule was unreasonable and pretextual. Once that, if that indeed is the holding of the court, I'm going to repeat Judge Watford's question. What is left that could justify an affirmative defense here? Yeah. This court clearly found that in his circumstances, he could not comply with the rule. There's more evidence in the record, such as the comparator evidence. The policy on the whole was not at issue in Thorsten Zumwalt. The validity of them, he was able to comply with it previously. The policy as a whole was not at issue. His ability to comply in these circumstances was at issue. And he was unable to comply, as this court found. So how, if that's a matter of law, he's unable to comply, how then could there be a good faith belief that he could comply, if as a matter of law, he could not? There was an honest belief on the part of the decision makers here, as the agency found, as demonstrated in the record, that he was supposed to report the injury. In other words, that indicates that there was no animus on the part of the decision makers towards his report of the injury, for they were applying a consistently applied policy in making the decision to discipline him in those particular circumstances. But is there honest belief, the determining factor here? If you have a rule that the person couldn't comply with, and the courts found that, what difference does it make whether these people he could or not? Because we've already found that he couldn't. I think the whole point of our argument is that there is no one determining factor when deciding whether the affirmative defense is met. All of the agency's evidence in support of the affirmative defense need to be considered to determine whether they are substantial or not. And the honest belief is part of that analysis and part of the evidence that supports it. And what this court said in Frost, I think, is instructive here. In that case, there was a jury instruction that this court correctly found short-circuited the consideration of the various statutory burdens. And we are making the same type of argument here, that all of the evidence that the agency, except for the failure to comply with the policy, but the other evidence that the agency relied on to support the affirmative defense, all of that should be considered, and the record as a whole should be considered. I still haven't, we'll go back to the question I think you asked earlier, what is that evidence? I think it's threefold. It's the fact that, as I mentioned, the supervisors honestly believe that he was supposed to report the injury, which again, that honest belief suggests there was no animus. The fact that many other employees, including Florcense and himself, in certain circumstances, did not comply with the policy, which suggests that it was not pretextual as a whole. It may have been impossible for him to comply with these particular circumstances, but the policy wasn't imposed in a way that prevented injury reporting. Let me interrupt you there. How can you reach that conclusion? Because there's an immeasurable here. You're talking about all those people who complied with the 72-hour, but if a person was injured, and couldn't comply with the 72 hours, either because they didn't discover their injury till later, or because they had already consulted with a doctor in order to determine, that person would know that he couldn't comply and would never file an injury report. There are people out there, you can't possibly know whether everybody is willing and able to comply with this rule, because the people who can't, you can't measure. Isn't that right? I understand that point, but again, the evidence in the record is what was before the agency and what the agency based its decision on. But you know, that same agency basically said that it rejected the Ninth Circuit's determination, because it was belied by the record and the board is doing a de novo review back to where it started, rejecting what I think everybody agrees is the law of the case. So, I'm not sure how one could now come back and say, but there are these other factors that permit an affirmative defense. If I may just respond to that, certainly the agency should have, it was certainly unnecessary and appropriate for the agency to express its disagreements with this court's conclusion with respect to the late reporting policy. We certainly understand on appeal that that issue was completely decided by the court and Thorson said what, but the agency from the case based its affirmative defense determination on a scope of evidence in addition to the failure to comply with the injury reporting policy. And what we are asking the court to do is at this point, evaluate that evidence under substantial evidence standard, apply that standard and make a determination, obviously, whether there was substantial evidence or not. Can I just stop you there to understand? I'm just trying to If we were to agree with you that there was substantial evidence, then I take it you would want us to affirm the ARB's determination, correct? Yes, that would result in denial of the petition. However, if we were to disagree with you that there is substantial evidence in light of this record, would we then take the position that Ms. Payne argued and remand for damages? I mean, to the extent that there is no substantial evidence, since the substantial evidence standard was not met, then I understand that NSF has made an alternative argument for remand, which was addressed when you were in a question to Ms. Payne. And certainly, the ARB has not decided that issue. So we don't necessarily have a position on whether that's a valid defense. I mean, NSF is welcome to make alternative defenses to the extent that the court does not find that that defense is worth reconsidering on remand. Yes, that would be the result. At that point, it would be for remand for determination of damages. Thank you. I'm just trying to get clear what the paths for decision are. That's very helpful. Thank you. I see that I've exceeded my time. If there are no further questions. Any other questions? I don't think so. I don't think so. Thank you. We respect the request of the court to deny the petition. Thank you. Good morning, Your Honors. May it please the court, Jacqueline Holmes for The Intervener, NSF Raleigh Company. The only question I think before the court at this stage is whether the board's decision below is consistent with Thorstenson 1. That's the argument that's been made in the petition. We believe the two opinions are consistent with each other, because nothing in Thorstenson 1 prevented the board from revisiting the affirmative defense on remand based on facts that were either not before the court in Thorstenson 1 or were untouched by court in Thorstenson 1. It's something agencies routinely do upon reversal. They reconsider their reasoning. They look at the record. Sometimes they reach the same conclusion. Sometimes they reach a different conclusion. I think that's what happened here. There's been a lot of back and forth. I think I have a question. I don't know if I'm interrupting you. You think that what was considered after that were not facts that the board said we got wrong, because I think we all seem to agree that that may have been a little excessive on the part of the board. They can't tell us we got the facts wrong as law of the case. What are the facts they that we didn't consider? I think Judge Rothstein, the principal one, and I'm sure we'll have a discussion about this, is the fact that management did honestly believe that Mr. Thorstenson had a work-related injury that had to be reported. That was not in the original ARB decision that this court reviewed in Thorstenson 1. It was in the underlying ALJ decision, but it was not in this court's decision. Of course, you typically review the board's decision, not the ALJ's decision. The reason I think that that matters, and I'm mindful of the colloquy you had earlier, is that this is not a case where it was unambiguously clear that Mr. Thorstenson could not comply. An example of that in my mind would be if someone were very badly injured, and let's say they're unconscious for five days, and they turn up on day five and report the injury. Clearly, if we've disciplined them for that, you couldn't possibly have a good faith belief that they were able to comply. Here, there's a difference of opinion, and I understand and completely respect this court's judgment, and I'm not trying to litigate that, but I do think it's important that the administrative law judge found it was possible to comply. There are a number of facts in this record that suggest that management had a reason to believe that it was possible. Can I just stop you there, though? Of course. As you point out, we're looking at the board's decision, not the underlying decision, but does it matter that the ALJ believed there were reasons that he could have complied once the Ninth Circuit made the determination that we've talked about here? Doesn't that pass out of the case? Certainly, the ALJ doesn't trump you, Judge. I'm not suggesting that you suggested that, but going back to the ALJ, it seems to me, and we see a lot of administrative cases, whether they're labor or immigration or whatever, so we're pretty sensitive to the initial decision maker and how that factors into the ultimate decision, but here, I'm not sure why that matters. Just to be clear, I think it matters only insofar as it shows that reasonable people can differ about whether it was possible. If it's determined as a matter of law that it was impossible? Well, because, again, the FERSA prohibits retaliation discrimination. It doesn't prohibit mistakes, so my management could have misjudged whether it was possible, but that doesn't make it retaliatory. If they misjudged, they thought it was possible, and that's what the agency found, that they genuinely honestly believed that they were disciplining him for a late report, and so that's a factual finding we have. Um, they could have been wrong. You clearly, you believe they were wrong, and that's, I completely respect that, right? I'm not trying to litigate that. I'm sincerely not. So you're saying that even though it's a matter of law, this reporting was an impossibility, that there could be a good faith belief on the part of the in a discrimination case, right? Because, again, it's a discrimination case. If the question were whether he violated the rule or not, and that was the legal question, then I lose. If so, if it's an arbitration case where that's the question, did he violate the rule? Has the company proven a rule violation? Sure, but where you have a discrimination case, and the question is what, you know, again, the FERSA does not prohibit us from making a mistake. It prohibits us from discriminating, from acting with an improper mindset, right? And so, and here, there were a number of facts, and I'm happy to lay them out, indicating that management had a reasonable or could have had a good faith belief. And again, the finding is that they did have a good faith belief that he, that Mr. Thorstensen violated the rule, right? So- Can I ask you, though, counsel, maybe if we're going to delve into the facts, I thought there were a collection of facts leading up to Mr. Thorstensen's reporting of the injury, albeit outside the 72 hour window, where he went, he sought guidance, actually, from people at the company, and they told him, no, you know, this is just a continuation of the old injury or, you know, whatever, you're probably more familiar with the specific facts I'm talking about, but I don't know, I just, it seems hard for me to accept your argument now that, well, management had this good faith belief when, I guess, lower level employees on the ground were, who were directly interacting with Mr. Thorstensen seemed to have a different view, and were telling him that he didn't need to report anything in the 72 hour window. Am I wrong on that? I think respectfully you are, Judge Watford, and let me explain why in some detail, because I think this is really important. So, there is a dispute in the record about what the train master told Mr. Thorstensen when he first called him on November 22nd, which was five days from the incident. The train master has said from day one, on the property, and always, I told him he had to report it. Mr. Thorstensen has said from day one, he wasn't sure he had to get back to me. So, there's two different versions, and I can point you specifically to the record. So, the train master, there's testimony in the on-property record at 99 to 100 of the excerpts of record, and there's testimony from Mr. Thorstensen saying exactly what I just said at 117. The ALJ laid out both of those versions. This is at 48 of the record, and he did not resolve that difference of opinion. He just, he didn't think it was important, so he didn't resolve it. Now, you could quibble with whether it was important, but he should really be the one to resolve it in the first instance because he's the fact finder, he's the one who heard the testimony. So, that's one. The other issue you may be referring to is that he called the claims department also on November 22nd, so on day five, and they said, we'll go ahead and treat this as an extension of your prior injury, but you need to talk to your train master, and that's what the record reflects as a matter of fact, as opposed to as a matter of allegation, that Mr. Thorstensen was asking lots of people and was getting the wrong information. In fact, what the ALJ found and the agency found repeatedly is that, and this was one of the issues that they had or the areas of concern that they had, is that Mr. Thorstensen could have called his union, his manager, his train master, and he didn't. He could have called for clarification, and he didn't seek that clarification. But wait a minute, we just decided that he did seek that clarification, that he went to the train master, even let's take his version, but he at least went to the train master. Can't tell us he didn't. He went to the train master on day five, judge. So after the period, right? He did not go prior to, he did not go, I mean, he did not go within 72 hours. We know that, we know that, and we know why he didn't go, which is that he didn't believe that it was a new injury that needed to be reported. But you have just told us that the facts dictate that he didn't make any inquiries, and the fact of the matter is record shows he did. As far as honest belief is concerned, the board itself found that the policy, at least one policy that BNSF had in place, the idea that if there was another S report within five years of having reported an injury, that it would be treated differently. And the board found that that was an improper procedure, an improper policy to have in place. What do you say about something like that being part of the board's procedure, of BNSF's procedures for years, as far as this whole honest belief thing is concerned? Why don't we look at that as part of understanding exactly how retaliatory BNSF really felt about injury reporting? So, I think a couple of things on that. So, first of all, I don't think that goes to whether or not BNSF had an honest belief that Mr. Horst had violated the injury reporting rule. I take the point that the policy was potentially problematic. It's not been in place for a very effective effect on Mr. Thorstenson here. There's not a lot in the record on the policy, but I can tell you because I know that there was a view that folks who are injured regularly might be working unsafely. Whether that's a good view or a bad view, that's why the policy existed. But again, it hasn't been in effect for well over a decade. It was in effect at this time, but at the same time, it had no effect on Mr. Thorstenson whatsoever. So, it would have given him a three-year review period instead of a one-year review period, but the safety violations occurred four or five months later. So, whether he had a three-year or one-year had no impact. And look, if what you're asking is could the agency have considered that in the first instance and looking through the facts, maybe they could have, but I think that was for them to do. And I don't think it shows a lack of substantial evidence that if they chose not to view it that way. Can I ask another question on this honest belief aspect of the affirmative? Of course. In your brief, you pointed us to an Eighth Circuit case, Kudyk versus your client here. Yes. Because we were, I guess it was news to me, you know, having been on the panel the first go that there was this other nuance to the affirmative defense that you could be mistaken, according to your argument. But as long as your belief was in good faith or was honest, then you could still avail yourself of the affirmative defense. I don't think we have any authority in our circuit that supports that proposition as a matter of law. You pointed us, I think, to this Kudyk case. That's at least the one that I looked at. And I just was having a hard time understanding how that case supports the proposition of law you're asking us to adopt here. Sure. And just to reset on that, so Kudyk addressed, as I recall, Kudyk did address the affirmative defense and the fact that the management demonstrated their belief of the rule. But I can point you to lots of other authority that probably does it more directly. So one case from the Eighth Circuit is the Blackerby case, which we do cite in our brief, where it's clear that the court holds that an honest belief instruction is appropriate on the affirmative defense. There's been a lot of litigation as to whether it's appropriate on contributing factor. But there's not really been a whole lot of pushback on whether it's appropriate under the affirmative defense. I think you can also see in the Epple case from the Fifth Circuit, that there is discussion. It's right at the end of that opinion about how management acted because they believed Mr. Epple had violated a rule. And then the case from this circuit that I would point you to is the Elliott case, which is admittedly a summary opinion. But a quote from it, Elliott says, in with regard to the affirmative defense, and I know that to be true, because I was deeply involved in Elliott, for better or for worse, says the record confirms the district court consistent with the jury instructions required BNSF only to prove only that it sincerely believed the misconduct occurred. So that is the same concept. And again, I think it's a concept that's also reflected, Judge Watford, in Title VII law within the circuit and elsewhere, that again, these statutes prohibit discrimination, they don't prohibit errors. And to your point about why didn't this come up the first time? Well, it didn't come up the first time because the agency didn't rely on that fact the first time. The agency in the board's decision did not touch the honest belief fact in their first decision. That showed up in the second decision as they were reconsidering the affirmative defense in light of your remand and in light of your holding, which they did accept. And I'll grant you that they characterized it as contributing factor holding, but they did accept this court's holding that Mr. Thorstenson could not be held to have violated the rule. Let me ask you something in terms of other cases that you're citing. This is a case in which the rule itself was found to be unreasonable in this situation. It is inextricably bound up with the final decision. There's no way you can make this rule, in this case, given our finding, can make it a reasonable one, even if there's an honest belief. It's still the fact that the rule was applied in a way that made it impossible for him to report his injury in time. And I understand that, and I'm not sure that I can express myself any differently than I already have, which is, look, that's true. He could not, in fact, comply based on your findings. We could have reasonably believed that he could comply, however. And if we reasonably believed that he could comply and that he therefore violated the rule, then that is not discrimination. It's a mistake. You know, a good faith belief does, of course, intersect with reasonableness. And that's what we're kind of trying to tease out here. But if a rule is so unreasonable that it would cause retaliation, then how could the company be saved by an argument? But in good faith, we thought it was reasonable. And Judge, I think what I would say is, this is not, in my view, so there could be a rule. I mean, so I agree to this extent. There could be a rule that is so unreasonable and so untethered to any rational purpose that it is, per se, retaliatory. So here's my example. I have an injury reporting rule, and I insist that employees write their injury report on blue paper. And I insist they do it in black ink. And I insist that they turn it in in person only between the hours of 2 and 3 p.m. And I put in all these requirements that really don't bear any relationship to the need for the injury report, right? Remember that BNSF's rule here is report all injuries immediately, okay? And there's really good reasons on the railroad for that. And then what we're dealing with with 72 hours is grace that's given to the employee for certain types of injuries where they may not know immediately. And so there's really good reasons on the railroad to have a rule that says report all injuries immediately. Our employees work far afield from We need to go out. We need to look at the situation. We need to fix problems that we aren't going to see. And that's essentially what the agency has held. It were the reasons for the rule. There's other reasons. We have obligations to report injuries to the government, etc. So my blue paper rule, there's no reason it has to be on blue paper. And so that rule is quite extreme, right? And it's clearly, I think, pretextual as a matter of law. And so just because I sincerely believed he didn't file it on blue paper, therefore I can fire him. No, that's not the point I'm making. I don't think we have a rule that is per se pretextual. I think we have a rule that you found in this case on these specific facts that you considered to be problematic for Mr. Thorstenson. But that's different to me. And that does leave open. It's kind of what I said before about it's not unambiguously a problem. It wasn't unambiguously impossible for him to comply. I understand that you found that he couldn't comply. But I think it's a question over which reasonable people can differ. Except for the fact that we found that he couldn't comply. Correct. And why is that still open? Why should we even be discussing that? Well, because again, and it's the point I made, it's that a reasonable person could believe that he could comply on these facts. Again, that's not to suggest you're not, right? Reasonable people can differ. There are certain questions in life over which reasonable people can differ. And I think this is one of them, candidly. I don't think the ALJ was being unreasonable when he found that he could comply. We've got your argument in mind. If I might just address the remand issue quickly. I just want to respond to one thing. So we have argued at every stage of this that Mr. Thorstenson could have been dismissed on a standalone basis for some very serious safety rule violations completely unrelated to the injury report that occurred later. I don't think that's foreclosed by the record at all. I understand Ms. Payne's argument and I obviously have great respect for her. But the HR manager gave a recommendation. She wasn't the decision maker. So the fact that her recommendation would stay the same, it doesn't really answer the question. The question is, what would management who believed that both employees should be fired and certainly believed that Thorstenson should be fired because they thought that his conduct was worse than the co-worker, what they would have done if the level S hadn't been there. Ms. Smith is talking about arbitration risk and those sorts of things, which is completely her purview and is completely appropriate. But she doesn't make the disciplinary decision. So I think it's entirely appropriate for this court to remand for consideration of that affirmative defense. Thank you. And thank you very much. I appreciate it. Thank you. Ms. Payne, you have some rebuttal time left? Yes, thank you. I want to say I'd like you to address two things. One, why shouldn't we remand on the standalone issue? And then second, even if this was a bad policy and reasonable vis-a-vis your client, why would that preclude a good faith defense in general? To your first question, and I think someone addressed this earlier, we don't take the position that your first opinion would address this or precluded BNF's argument on the standalone dismissal. But we believe that the record does preclude that argument and this court could decide that such a remand would not be warranted on the record. I make those arguments in my brief. Particularly, it wasn't just that the HR manager made a recommendation to another manager who is the decision maker, but that manager accepted that recommendation. So the fact that her recommendation would not have been different is relevant and does preclude their argument on remand. But again, we would understand if this court wanted the ARB to make that decision in the first instance, since this issue was not fully briefed on the first appeal. And we don't take a strong position on that. However, this case has been pending for 12 years. I guess the other question I have is given how long the case has taken and where it is procedurally, has there been any waiver or acquiescence in not having that issue decided before? No, I mean, I think it's been briefed all along the way. And I think that the record that the ALJ and the ARB has consistently said that the only reason Thorstensen was terminated was because of the progressive disciplinary policy. They could have easily said that a standalone dismissal met their affirmative defense argument. They've declined to decide that, I think, because of their determination, especially particularly the use of the word only in the ALJ where at 1 ER 61, where he says the termination occurred only because under BNF's progressive disciplinary policy, the prior level S discipline for late reporting and injury combined with the second level S discipline to allow a dismissal. And that just really, I think, precludes their argument that he would have been terminated on a standalone dismissal. And then as to the honest belief, first, I want to clarify what the belief was here in the record, because BNSF is referring to an honest belief that he could comply with the rule, but that's not in the record. At most, again, there was an honest belief that he had violated the rule. And that's, I think, different than an honest belief that he could comply with the rule. There is nothing in the record regarding any manager's testimony that they had an honest belief that he could comply with the rule. And I think those are two different things because as I stated earlier, we know that BNSF always enforced its rule if somebody didn't report an injury within 72 hours, despite the circumstances. So it's honest belief that there was a violation of the rule is kind of irrelevant in this situation. Thank you. I think we've given you as well as the other parties additional time and we appreciate the arguments. The case just argued of Thorstensen versus Department of Labor, as well as BNSF Railway Company is submitted. I thank all counsel for your argument this morning and for appearing by Zoom. And with that, the court is concluded. Thank you. This court for this session stands adjourned.
judges: McKEOWN, WATFORD, Rothstein